UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| ELVAN CONFECTIONARY CORP. and ELVAN GIDA SANAYI VE TICARET ANONIM SIRKETI,<br>    Plaintiffs,<br><br>v.<br><br>TURKANA FOOD, INC., SPIRIT FOOD GROUP INC. and CENGIZ YALIM,<br>    Defendants. | Civil Action No. 19-cv-11089<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Elvan Confectionary Corp. ("Elvan USA") and Elvan Gida Sanayi Ve Ticaret Anonim Sirketi ("Elvan Gida") (collectively "Plaintiffs") for its complaint against Turkana Food, Inc. ("Turkana"), Spirit Food Group Inc. ("Spirit"), and Cengiz Yalim ("Yalim) (collectively "Defendants") state that:

### NATURE OF THE ACTION

1. Plaintiffs bring this Complaint against their former business associate Turkana, Turkana's affiliate Spirit, and Turkana/Spirit's agent Yalim to put an end to the Defendants willful infringement of Elvan Gida's valuable trademarks and to recover significant losses Plaintiffs have incurred as a direct result of the Defendants wrongful and deceptive conduct.

2. Elvan Gida is a Turkish manufacturer and seller of candies, chocolates, and baked goods worldwide. Elvan Gida was founded in 1952 and currently distributes its products in 130 countries.

1

3. Elvan Gida began selling its products in the United States in 2005. Elvan Gida through Elvan USA currently sells its products through distributors, wholesalers and in national retail chains such as Dollar General, CVS, Market Basket, Albertson, and Cumberland Farms.

4. Turkana began importing and distributing Elvan Gida's products in the United States in 2011 based upon an oral understanding of the Parties. In 2016, the Parties executed a nine sentence "Distributor and Importer Agreement" formalizing their course of dealing ("Agreement"). At *no* time has Turkana ever been an exclusive distributor of Elvan Gida's products in the United States. Elvan Gida *never* granted or assigned to Turkana any trademark rights in *any* of its products.

5. Elvan Gida formed Elvan USA in 2017 to import its products into the United States and sell them through a different distribution network than Turkana had been utilizing.

6. Turkana breached the Parties' Agreement by failing to pay for its orders and distributing Elvan Gida products without Elvan Gida's authorization. Turkana and its affiliate Spirit (i) fraudulently attempted to register with the United States Patent and Trademark Office (USPTO) and registered with the USPTO Elvan Gida's trademarks, (ii) interfered with Elvan Gida's legitimate trademark rights, (iii) interfered with Elvan Gida and Elvan USA's customer contracts and relationships by asserting Spirit/Turkana's fraudulently obtained trademarks against Plaintiffs' customers, and (iv) sold goods infringing upon Elvan Gida's trademarks.

7. Elvan Gida seeks injunctive, monetary and other relief under the Lanham Act and state unfair competition laws for Turkana, Spirit and Yalim's illegal and improper use of Elvan Gida's trademarks. Plaintiffs also seek to recover their losses stemming from Turkana, Spirit and Yalim's fraudulent conduct and interference with their customer relationships.

**PARTIES**

8. Plaintiff Elvan Confectionary Corp. ("Elvan USA") is a domestic corporation organized and existing under the laws of New Jersey with its principal place of business at 983 Riverside Drive, Methuen MA 01844.

9. Plaintiff Elvan Gida is a foreign, corporate type, legal entity organized and existing under the laws of Turkey with its principal place of business at Tevfik Bey Mah. Tahsin Tekoğlu Cad. No: 26 Sefaköy, İstanbul, Turkey.

10. Defendant Turkana is a domestic corporation organized and existing under the laws of the state of New Jersey. Turkana has its principal place of business at 555 N. Michigan Avenue, Kenilworth, New Jersey 07033.

11. Defendant Cengiz Yalim is an individual with an address at 555 N. Michigan Avenue, Kenilworth, New Jersey 07033. Upon information and belief, Cengiz Yalim is an agent and officer/director of both Turkana and Spirit.

12. Defendant Spirit is a New Jersey corporation having a principal place of business at 384 US Highway 46, Parsippany, New Jersey 07054.

13. Upon information and belief, Spirit is an affiliate of Turkana. Cengiz Yalim is the agent and officer/director of Spirit.

**JURISDICTION AND VENUE**

14. This Court has jurisdiction of the subject matter of this action under 28 U.S.C. §§ 1331, 1367(a), and 1338, the Lanham Act, Title 15 of the United States Code, and principles of supplemental and ancillary jurisdiction. This Court has subject matter jurisdiction over Elvan Gida's claims arising under the trademark laws of the United States. The Court also has supplemental jurisdiction over related claims arising under Massachusetts law.

15. Defendants are subject to this Court's personal jurisdiction because they have purposefully availed themselves of the rights and benefits of the laws of Massachusetts, and their Massachusetts activities give rise to Plaintiffs' claims. Defendants have conducted business in Massachusetts by marketing and selling infringing products to Massachusetts businesses. Through its network of wholesalers, Defendants sales of infringing goods reach Massachusetts consumers.

16. Upon information and belief, Defendants fraudulently obtained Elvan Gida's trademarks and threatened Plaintiffs' customers in Massachusetts with infringement lawsuits if they continued selling Elvan Gida's products.

17. Elvan USA, located in Massachusetts, has been harmed by Plaintiffs' actions.

18. Venue is proper in this Court under 28 U.S.C. §§ 1391(b).

## FACTUAL BACKGROUND

### The History of Elvan Gida

19. Elvan Gida has been a manufacturer and seller of confections in Turkey since 1952.

20. Elvan Gida owns six factories in Turkey and two factories outside of Turkey where it manufactures its products.

21. Intersweet Dis Ticaret Anonim Sirketi is known in English as Intersweet Foreign Trade Co. ("Intersweet") and is a subsidiary of Elvan Gida and this branch of Elvan Gida is the exporter of products from Turkey.

22. Elvan Gida and its related companies including Intersweet employ approximately 2000 individuals around the globe.

23. Elvan Gida and its related companies manufacture a wide range of products, including chocolates, wafers, candy jellies, cakes and croissants, and distribute their products in 130 countries.

24. Elvan Gıda is a major international brand, owning in excess of one hundred active trademarks on its brands internationally.

### Examples of Elvan Gida's Brands

25. Elvan Gida's brands include ELVAN for chocolates, wafers, candy jellies, cakes and croissants. A depiction of the stylized ELVAN mark is:



26. Other examples of Elvan brands for individual products include (i) JELAXY gummy candy (*see* http://www.elvan.com.tr/en/products/candy/gummy-candy/jelaxy/fruitmix/20-gr)



(ii) COFFIX coffee candy with filling (*see* http://www.elvan.com.tr/en/products/candy/hard-candy/coffex/coffee/40-gr)



(iii) TOFFIX candies (*see* http://www.elvan.com.tr/en/products/candy/soft-candy/toffix/assorted-fruity-filled/40-gr)

5



and (iv) TODAY cakes and baked goods (*see* http://www.elvan.com.tr/en/products/baked-goods/cake/today/muffin/muffin-strawberry/23-gr-x-2)



**Elvan Gida's Product Sales in the United States**

27. Elvan Gida began exporting its products for sale to the United States in 2005. Elvan Gida worked with a number of importers and distributors of its products prior to Turkana, including Sunrise USA Inc., Boston Warehouse, and Andina Brands LLC.

28. In 2011, Turkana began distributing Elvan Gida's products based upon an oral understanding between Elvan Gida and Turkana/Yalim.

29. Turkana was <u>not</u> an exclusive distributor of Elvan Gida's products in the United States.

30. In approximately 2013, Intersweet became responsible for the export of Elvan Gida products from Turkey to the United States.

31. Intersweet exported Elvan Gida's products to Turkana for distribution in the United States.

32. On October 14, 2016, Elvan and Turkana executed a "Distributor and Importer Agreement" consisting of nine sentences ("Agreement"). *See* Exhibit A. *Nowhere* in the

6

Agreement does Elvan grant to Turkana *any* exclusive right to distribute Elvan's products in the United States. Instead, the Agreement merely puts in writing the course of dealing that the two companies had been abiding by for the previous five years.

### Elvan Creates Elvan USA

33. Turkana mainly distributed Elvan Gida's products through its existing network of wholesalers.

34. Elvan Gida wished to also distribute its products through national grocery stores in the United States since Turkana did not distribute Elvan Gida's products in this manner.

35. Elvan Gida therefore caused Elvan Confectionary Corp. ("Elvan USA") to be formed as a New Jersey corporation in January of 2017. Elvan USA was formed to distribute Elvan Gida's products to national grocery stores in the United States.

36. Beginning in approximately January 2017, Elvan Gida/Intersweet began exporting its branded products to Elvan USA for the purpose of sale and distribution of such products in the United States.

37. On February 15, 2017, Turkana, through Yalim, agreed to start placing Turkana's orders through Elvan USA. *See* Exhibit B.

### Turkana and Yalim Breach their Agreement with Elvan

38. On March 3, 2017, Turkana cancelled its contract with Elvan Gida claiming that the distribution of Elvan Gida's products through Elvan USA violated the Parties' "exclusive importation and distribution contract." *See* Exhibit C.

39. Turkana claimed that it would stop receiving its orders placed with Elvan Gida, return Elvan Gida's previously delivered products, and stop its sales of Elvan Gida products to its customers.

40. On April 4, 2017, Elvan Gida responded to Turkana's March 3, 2017 correspondence stating that (i) Elvan Gida never agreed that Turkana would be its exclusive importer and distributor of its products in the United States; (ii) Turkana breached its contract with Elvan Gida; and (iii) Elvan Gida will not accept the return of products previously ordered by Turkana. *See* Exhibit D.

41. After March 3, 2017, Turkana stopped paying Elvan Gida for the Elvan Gida products its had ordered, received, and continued to sell.

42. On October 10, 2017, Intersweet brought a lawsuit against Turkana and Yalim for nonpayment of Elvan Gida goods ordered and received by Turkana/Yalim totaling $158,563.96.

**Spirit Fraudulently Seeks to Obtain Elvan Gida's Trademarks**

43. Turkana was never the exclusive distributor of Elvan Gida's products.

44. Elvan Gida never provided written consent to Turkana/Spirit to register for its trademarks.

45. Elvan Gida never provided written agreement or acknowledgment to Turkana/Spirit that Turkana/Spirit were owners of any Elvan Gida trademark in the United States.

46. Elvan Gida never provided Turkana/Spirit with an assignment of any of its trademark rights in the United States or the business and goodwill appurtenant thereto.

47. Defendant Spirit was incorporated in New Jersey on August 22, 2016.

48. Upon information and belief, Spirit is an affiliate of Turkana and Defendant Yalim is its agent and officer/director.

49. Since its incorporation less than three years ago, Spirit has applied for eleven trademarks with the United States Patent and Trademark Office. Six of the trademarks for which Spirit applied are owned by Elvan Gida. *See* list of trademarks in table *infra*. These trademark

8

applications were filed after the March 3, 2017 correspondence from Turkana cancelling the importation and distribution contract.

| MARK | DATE OF TM APP. | TM APP. NO. | SPECIMEN | REGISTERED? |
|---|---|---|---|---|
| TODAY | April 4, 2017 | 87398293 | | NO |
| ELVAN | June 2, 2017 | 87473721 | | PENDING |
| TOFFIX | June 2, 2017 | 87473713 | | PENDING |
| FIORELLA | June 2, 2017 | 87473695 | | NO |
| COFFEX | June 2, 2017 | 87473731 | | YES |
| JELAXY | June 2, 2017 | 87473741 | | YES |

9

50. Spirit applied for registration with the USPTO for the TODAY, ELVAN, TOFFIX, FIORELLA, COFFEX and JELAXY trademarks depicted in the table *supra* ("Applied For Marks").

51. Each of the Applied For Marks claim a date of first use in the U.S. *prior to* the date of Spirit's incorporation. Spirit claimed for each Applied For Mark that it continuously had been/has been selling food products under the Applied for Marks from 2014 through the date of the application/registration.

52. Elvan was selling products using the Applied For Marks to Turkana prior to 2014. *See* examples of 2011 JELAXY sales and 2012 COFFEX sales at Exhibits E and F.

53. Upon information and belief, Spirit/Turkana has been selling and continues to sell Elvan Gida branded products, as depicted in the table *supra*, in violation of Elvan Gida's trademark rights.

54. Upon information and belief, Spirit/Turkana continues to sell counterfeit goods using the Elvan Gida trademarks, including but not limited to JELAXY and COFFEX; upon information and belief, Spirit/Turkana has obtained such counterfeit goods from manufacturers in China.

55. In each of the trademark applications listed in the table *supra*, Spirit, through its trademark counsel Xavier Morales, declared *under oath*, that Spirit was the owner of the Elvan Gida trademarks, no other entities had the right to use such trademarks in commerce, and that Attorney Morales had evidentiary support for his factual contentions.

56. If Attorney Morales relied upon Spirit's assertions that Turkana was the United States distributor for Elvan Gida, Attorney Morales was required to review Elvan Gida's (i) written consent to Turkana/Spirit to register its trademarks, (ii) agreement/consent that Spirit/Turkana was

the owner of the trademarks, or (iii) assignment of the Elvan Gida trademarks to Spirit/Turkana in accordance with TMEP 1201.06(A).

### Elvan Gida's JELAXY and COFFEX Trademarks

57. Despite its false assertions, Spirit/Turkana successfully registered Elvan Gida's JELAXY and COFFEX trademarks with the USPTO.

58. Spirit/Turkana registered JELAXY on October 24, 2017 for "Bakery goods; Biscuits; Cakes; Candy; Chocolate candies; Chocolate and chocolates; Chocolates and chocolate based ready to eat candies and snacks; Cookies; Croissants; Pastries; Snack foods, namely, chocolate-based snack foods; Sweets; Wafers; Chocolate confections; Frozen confections." *See* Trademark Registration No. 5317259.

59. Spirit/Turkana registered COFFEX on October 24, 2018 for "Bakery goods; Biscuits; Cakes; Candy; Chocolate candies; Chocolate and chocolates; Chocolates and chocolate based ready to eat candies and snacks; Cookies; Croissants; Pastries; Snack foods, namely, chocolate-based snack foods; Sweets; Wafers; Chocolate confections; Frozen confections." *See* Trademark Registration No. 5317258.

### Elvan Gida and Spirit's Pending TTAB Proceedings

60. On December 11, 2017, Elvan Gida filed cancellation proceedings with the USPTO's Trademark and Trial Appeal Board ("TTAB") for Spirit/Turkana's JELAXY and COFFEX trademarks. *See* TTAB Cancellation Proceeding No. 92067544

61. Spirit is actively interfering with Elvan Gida registering its trademark in the United States for ELVAN in an Opposition Proceeding before the USPTO. TTAB. *See* TTAB Opposition Proceeding No. 91242507.

11

62. Neil Burstein is currently Spirit's trademark attorney attempting to fraudulently obtain Elvan Gida's trademarks, defending Spirit/Turkana's fraudulently obtained trademarks, and opposing Elvan Gida's rightful trademark rights.

**Spirit/Turkana Interferes with Elvan Gida's Customer Contracts/Relationships**

63. In April of 2018, Spirit/Turkana directed its trademark attorney Neil Burstein to send cease and desist letters to Plaintiffs' customers purchasing its JELAXY and COFFEX branded candies.

64. In its cease and desist correspondence, Spirit/Turkana claimed that Plaintiffs' customers' sales of Elvan Gida's products violated Spirit/Turkana's trademark rights in JELAXY and COFFEX and "[s]uch unauthorized use constitutes trademark infringement, unfair competition and trademark dilution in violation of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*., subjecting you to liability for damages and disgorgement of your profits."

65. Spirit/Turkana further demanded that Elvan Gida's customers "immediately cease and desist from any and all further sales or distribution of the JELAXY and COFFEX branded products unless sold to you by [Spirit]."

66. Spirit/Turkana insisted that Elvan Gida's customers provide Spirit/Turkana with their "prompt written assurance that [*sic*] will immediately ceases [*sic*] and desist all sales and uses under the JELAXY and COFFEX trademark marks and provide an accounting of all revenues and sales under such marks to date."

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT
### (Elvan Gida v. Defendants)

67. The averments of the preceding paragraphs are restated.

68. Upon information and belief, Defendants have used in commerce trademarks,

including the Applied For Marks, that are identical and/or confusingly similar to Elvan Gida's trademarks, in connection with the sale, offering for sale, distribution and/or advertising of goods and such uses are likely to cause confusion or to cause mistake or to deceive.

69.     The aforesaid acts of the Defendants constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

70.     The aforesaid acts of Defendants have been intentional, willful, and in bad faith.

71.     Elvan Gida has been and is likely to be damaged in the future by the Defendants infringing and unlawful acts.

72.     The acts of Defendants complained of herein have caused and, unless enjoined by this Court, are likely to continue to cause Elvan Gida to suffer irreparable harm.

73.     Elvan Gida is entitled to relief pursuant to 15 U.S.C. §§ 1116, 1117 and 1125.

## COUNT II
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (Elvan Gida vs. Defendants)

74.     The averments of the preceding paragraphs are restated.

75.     Upon information and belief, Defendants have used in commerce trademarks, including the Applied For Marks, that are identical and/or confusingly similar to Elvan Gida's trademarks in connection with the sale, offering for sale, distribution and/or advertising of goods and such uses are likely to cause confusion or to cause mistake or to deceive.

76.     The aforesaid acts of the Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Elvan Gida or Elvan Gida's goods with goods that are not Elvan Gida's, or as to the origin, sponsorship, or approval of Defendants' goods, services, or commercial activities by Elvan Gida.

77. The aforesaid acts of Defendants constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

78. The aforesaid acts of Defendants have been intentional, willful, and in bad faith.

79. Elvan Gida has been and is likely to be damaged by Defendants' conduct and unlawful acts.

80. The acts of Defendants complained of herein have caused and, unless enjoined by this Court, are likely to cause Elvan Gida to suffer irreparable harm.

81. Elvan Gida is entitled to relief pursuant to 15 U.S.C. §§ 1116, 1117 and 1125.

## COUNT III
## UNFAIR COMPETITION MASSACHUSETTS COMMON LAW
**(Elvan Gida v. Defendants)**

82. The averments of the preceding paragraphs are restated.

83. The Defendants have used in commerce trademarks, including the Applied For Trademarks, that are identical and/or confusingly similar to Elvan Gida's trademarks in connection with the sale, offering for sale, distribution and/or advertising of goods and such uses are likely to cause confusion or to deceive the consuming public.

84. The aforesaid acts of Defendants constitute unfair competition in violation of common law.

85. The aforesaid acts of Defendants have been intentional, willful, and in bad faith.

86. Elvan Gida has been and is likely to be damaged by Defendants' unlawful acts.

87. Elvan Gida is entitled to any and all relief authorized by law.

88. The acts of Defendants complained of herein have caused and, unless enjoined by this Court, are likely to cause Elvan Gida to suffer irreparable harm.

## COUNT IV
## FRAUD ON THE TRADEMARK OFFICE
### (Elvan Gida v. Spirit and Yalim)

89. The averments of the preceding paragraphs are restated.

90. Upon information and belief, in its applications for federal trademark registration for the Applied For Marks submitted to the USPTO, the Defendants Spirit and Yalim, through counsel, swore pursuant to 15 U.S.C. § 1051(a) that they were the owners of the designations.

91. Upon information and belief, in its applications for federal trademark registration for the Applied For Marks submitted to the USPTO, Defendants Spirit and Yalim swore pursuant to 15 U.S.C. § 1051(a) that it first used the Applied For Marks designations in interstate commerce as early as 2014.

92. Upon information and belief, at the time Defendants Spirit and Yalim submitted the applications for federal registration of the Applied for Marks, they knew or should have known that Elvan Gida was the owner of the Applied For Marks.

93. Upon information and belief, at the time Defendants Spirit and Yalim submitted the applications for federal registration of the Applied For Marks, they knew or should have known that the Applied For Marks were first used in interstate commerce by Elvan Gida and its affiliate Intersweet prior to 2014.

94. Upon information and belief, at the time Defendants Spirit and Yalim submitted the applications for federal registration of the Applied for Marks, they no longer had a contractual agreement with Elvan Gida, the owner of the Applied For Marks.

95. Upon information and belief, Defendants made these false statements with the intent to induce approval for the publication, the publication and ultimately the registration of the Applied for Marks.

96. Upon information and belief, Defendants submitted specimens of Elvan Gida's products to falsely claim use of the trademarks with the intent to induce approval for the publication, the publication, and ultimately the registration of the Applied for Marks.

97. Upon information and belief, Defendants knew or should have known at the time it filed the applications listed in the table *supra* that the statements contained in the declarations and applications were false.

98. Upon information and belief, Elvan Gida believes that absent such false statements and false submissions Defendant Spirit's applications would have been denied by the USPTO.

99. Elvan Gida has been damaged by Spirit's registration of the JELAXY and COFFIX designations.

100. Elvan Gida is entitled to relief pursuant to 15 U.S.C. §§ 1119 and 1120.

**COUNT V**
**INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS**
**(Plaintiffs v. Defendants)**

101. The averments of the preceding paragraphs are restated.

102. Elvan Gida, through Intersweet and Elvan USA, had contractual and other relationships with various customers in the United States, namely wholesalers and retail grocery stores, to which it sold its products and derived an economic benefit.

103. The Defendants knew which of Plaintiffs' customers were selling Elvan Gida's products in their stores or through their distribution network.

104. The Defendants interfered with Plaintiffs' contractual and other relationships with their customers through improper motive and means by fraudulently obtaining Elvan Gida's trademarks and then sending cease and desist letters to Plaintiffs' customers based upon the fraudulently obtained trademarks.

105. Plaintiffs' relationships with its customers and sales to its customers have been damaged as a direct result of Defendants' conduct.

106. The aforesaid acts of Defendants have been intentional, willful, and in bad faith.

107. Plaintiffs have been and continue to be damaged by Defendants' unlawful acts.

108. Plaintiffs are entitled to any and all relief authorized by law.

109. The acts of Defendants complained of herein have caused and, unless enjoined by this Court, are likely to cause Plaintiffs to suffer irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that judgment be entered in their favor and against Defendants, and that the Court enter an order:

(a) preliminarily and permanently enjoining Defendants, its officers, directors, employees, agents, assigns, servants, and any other person in active concert or participation with any of them, from using the Applied For Marks, and any other designation that is comprised of or incorporates any Elvan Gida trademark, any colorable imitation thereof, or any other designation, mark, or product name confusingly similar to Elvan Gida's;

(b) requiring Defendants to account for all profits earned as a result of the challenged conduct and otherwise awarding Elvan Gida damages for Defendants unlawful conduct pursuant to 15 U.S.C. § 1117;

(c) awarding Elvan Gida treble damages pursuant to 15 U.S.C. § 1117;

(d) ordering the cancellation of the registrations for JELAXY and COFFEX pursuant to 15 U.S.C. §§ 1052(d) and 1119 and dismissal of Spirit's opposition to ELVAN;

(e) awarding Plaintiffs damages for Defendants' unlawful conduct pursuant to 15 U.S.C. § 1120;

(f) awarding Plaintiffs damages, punitive damages and interest for fraud and unfair competition in an amount to be determined at trial;

(g) granting Plaintiffs the costs, including attorneys' fees, pursuant to 15 U.S.C. § 1117;

(h) granting Plaintiffs the costs, including attorneys' fees, incurred in bringing this suit; and

(i) such other and further relief as may be deemed appropriate by the Court.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Respectfully Submitted by Plaintiffs,

By and through their attorneys,

Dated: May 10, 2019         */s/ Catherine I. Rajwani*

Catherine I. Rajwani, Esq. (BBO# 674443)
THE HARBOR LAW GROUP
300 West Main Street, Building A, Unit 1
Northborough, MA 01532
Phone: (508) 393-9244
Fax: (508) 393-9245
Email: crajwani@harborlaw.com